UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X Docket#
UNITED STATES OF AMERICA,      : 16-mj-00280-VVP-1
                               :
     - versus -                : U.S. Courthouse
                               : Brooklyn, New York
YANG KIM,                      :
              Defendant        : April 8, 2016
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL HEARING
BEFORE THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government**:          **Robert L. Capers, Esq.**
                                 United States Attorney

                          BY:    **Nomi Berenson, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant**:           **Samuel Jacobson, Esq.**
                                 Federal Defenders of
                                 New York
                                 One Pierrepont Plaza
                                 Brooklyn, NY 11201


**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for Bail Hearing,

2   docket number 16-mj-280, USA v. Kim.

3          Counsel, please state your appearances for the

4   record.

5          MS. BERENSON:  Nomi Berenson on behalf of the

6   United States.  With me this morning is probation officer

7   Ryan Lehr.

8          Good morning, your Honor.

9          MR. JACOBSON:  Good morning, your Honor.

10          Sam Jacobson, Federal Defenders on behalf of

11   Andrew Kim, who is present beside me and here with us

12   today also is social worker Danielle Azarelli.

13          THE COURT:  I'm sorry?

14          MR. JACOBSON:  Social worker Danielle Azarelli

15   is here today, as well.

16          PRETRIAL SERVICES OFFICER:  Your Honor, I just

17   wanted to correct, that's pretrial services officer Ryan

18   Lehr.

19          MS. BERENSON:  Excuse me.

20          THE COURT:  Okay.  And it's Naomi, did you say?

21          MS. BERENSON:  Nomi.

22          THE COURT:  Nomi, okay.  I might as well get --

23   I'm sorry, your full name please, Officer?

24          PRETRIAL SERVICES OFFICER:  Ryan Lehr.

25          THE COURT:  L-E-A-R?

3

Proceedings

1          PRETRIAL SERVICES OFFICER:  L-E-H-R.

2          THE COURT:  And the social worker please, Mr.

3 Jacobson?

4          MS. AZARELLI:  Danielle Azarelli.

5          THE COURT:  All right.  So we're going to

6 address the motion essentially by the defendant to I

7 guess strike certain conditions of release. Before we get

8 started, the record is not clear as to what the

9 conditions of release are.  I went and pulled the order

10 setting conditions of release and bond and it doesn't

11 reflect that any electronic monitoring was imposed but it

12 was my memory that I had, in fact, imposed electronic

13 monitoring in the second proceeding that we had that day.

14          But I did not impose any curfew, if I recall

15 and there were some -- I did not impose a curfew.  None

16 of that is reflected in the order setting conditions of

17 release.

18          So I shouldn't say none of that.  I mean, there

19 is no curfew in the order but there's also no electronic

20 monitoring, as far as I read this.  Nevertheless, there

21 is, as I understand it, some kind of electronic

22 monitoring in place.

23          Mr. Lehr, do you know what specific kind of

24 monitoring is in place?

25          PRETRIAL SERVICES OFFICER:  Yes, your Honor.

4

Proceedings

1  The defendant is wearing a GPS bracelet and there's no

2  restriction on his time.  So it's basically an open

3  schedule, we call it.

4          THE COURT:  I know that there is no provision

5  for pretrial services supervision even in the -- or maybe

6  I am misreading -- I take it back.  There is pretrial

7  services supervision.  All right.

8          Well, this is the defendant's motion seeking a

9  modification of bail conditions and I'll let you speak

10  first, Mr. Jacobson.  I do want you to address something

11  that really -- neither party addressed and it's not

12  anybody's fault, but the Adam Walsh Act seems to require

13  a curfew in addition to electronic monitoring and there

14  may be some other things that -- there are a couple of

15  other things that are mandated.  And what is your

16  position in your presentation, Mr. Jacobson?  I would

17  like you to address whether in the context of this case,

18  it's also would be unconstitutional to impose a curfew.

19  And if it's not unconstitutional to impose a curfew, then

20  how is the additional condition of electronic monitoring,

21  just to enforce or make sure of compliance with the

22  curfew unconstitutional.

23          So in other words, if it's constitutional to

24  impose a curfew, why would it be unconstitutional to

25  impose electronic monitoring to ensure compliance with

5

                              Proceedings

1   the curfew?  So address that somewhere in your remarks

2   and but otherwise, you're free to say what you want and

3   you're free to address whatever arguments were made in

4   the government's opposition because you didn't have a

5   chance to reply.

6           MR. JACOBSON:  Thank you, your Honor.  I can

7   address the curfew issue up front.  It wasn't in our

8   brief because the government hadn't asked for a curfew

9   and curfew wasn't imposed as a condition.  So it was my

10  understanding that we didn't have standing to brief that

11  issue and to challenge the constitutionality of that

12  issue.

13          THE COURT:  That's fine.  I'm not in any way

14  criticizing anybody for that.  It's just that as I was

15  going through this and reading the cases and looking at

16  the statute, it came to my attention that electronic

17  monitoring and curfews is required.

18          MR. JACOBSON:  Right.  So we're specifically

19  challenging the electronic monitoring.  If the government

20  were to ask for a curfew and the government -- and the

21  Court were to impose it, we would also challenge that

22  condition as unconstitutional for the same reasons that

23  the electronic monitoring is unconstitutional.

24          It has the same Eighth Amendment implications

25  and the same Fifth Amendment implications, as well as

6

Proceedings

1   separation of powers issues.  And if there are any

2   specific questions the Court has about how they differ

3   but our position is definitely that even without a

4   curfew, just electronic monitoring is also

5   unconstitutional.

6           THE COURT:  Okay.

7           MR. JACOBSON:  And I think there's also a bit

8   of a lack of clarity in the case law about what type of

9   challenges defendants are bringing to this statute,

10  whether it's as applied or a facial challenge.  In our

11  case, we are bringing both a facial challenge to the

12  statute as a whole, and as applied challenge with respect

13  to Mr. Kim.

14          And when I say a facial challenge, a facial

15  challenge to the subsection of the Adam Walsh amendments

16  that address electronic monitoring and curfew, if that

17  were something that the government would be asking for.

18          And the reason it's a facial challenge is

19  because our position is that it's unconstitutional with

20  respect to every person who is subjected to mandatory

21  conditions of electronic monitoring and it's as an

22  applied challenge, because in this case, the Court made a

23  specific finding that electronic monitoring was not

24  necessary to ensure public safety and to ensure that Mr.

25  Kim came to his court appearances.

7

Proceedings

1            So I would like to start out by addressing sort

2      of the general landscape and trends in the case law on

3      these issues.  As an initial matter, I think that every

4      court that has addressed this issue in the Second Circuit

5      has found this subsection to be unconstitutional.

6      Specifically, that's U.S. v. Arzberger, which was

7      Magistrate Judge Francis in the Southern District, U.S.

8      v. Polizzi, which was the Judge Weinstein opinion in the

9      Eastern District and then a case that is not cited in my

10     brief but that I found, U.S. v. Karper and that's 847

11     F.Supp 2d 350.  It's a 2011 opinion by Judge Trease in

12     the Northern District of New York.  So, those three cases

13     to --

14            THE COURT:  U.S. v. Karper, you say?

15            MR. JACOBSON:  Karper, K-A-R-P-E-R.

16            THE COURT:  All right.

17            MR. JACOBSON:  So in those three cases, to be

18     sure, it was on different grounds that it was found

19     unconstitutional but in all three cases, the subsection

20     was found to be unconstitutional.

21            When we look outside the Second Circuit, you

22     find similar trends.  On the Eighth Amendment question,

23     the excessive bail question, seven out of the nine courts

24     that have addressed it have found this subsection to

25     constitute excessive bail.  And on the Fifth Amendment,

8

Proceedings

1    due process issue, both substantive and procedural, you

2    have eleven out of the fourteen courts that have

3    addressed it, have found it to be unconstitutional.

4         I believe the three courts that didn't find it

5    to be unconstitutional it was only a facial challenge

6    because the Court had already made a specific finding as

7    to that individual that electronic monitoring was

8    necessary to protect the public.  In some of those cases,

9    it was a hands on contact charge or there was a prior

10   offense that was alleged.  And so, in those cases, the

11   defendant could not argue that it didn't apply to him

12   because the Court had already made a finding.

13        And then on the separation of powers issue,

14   three out of five courts that have addressed the issue

15   have found it to be unconstitutional.  Really four out of

16   five because one of the two is Arzberger in the Southern

17   District where the Court said it wasn't a separation of

18   powers issue but said that it was, in fact, excessive

19   bail and was, in fact, a violation of the defendant's

20   procedural rights.

21        And the numbers are actually misleading because

22   some of the courts did find it unconstitutional on one

23   prong, have found it -- that found it constitutional on

24   one prong but found it unconstitutional on the other.

25        So in the Second Circuit have all of the Courts

Proceedings

1  finding it unconstitutional and the other -- in other

2  circuits, you have the vast majority of courts finding it

3  to be unconstitutional.

4          I think the reason you see it, so few appellate

5  opinions in these cases is that the government just

6  decides not to appeal.  They don't want to set bad law on

7  these cases.  So instead, we end up litigating it judge

8  by judge.  So there's certainly no Second Circuit opinion

9  on the issue.

10          I think I outlined the three grounds for relief

11  in our brief.  So I just wanted to kind of address the

12  government's specific arguments and try to rebut some of

13  those.  the government tries to use as some cases that

14  involve electronic monitoring as a condition of probation

15  or supervised release and I think this is a very

16  different context because pretrial -- people who are

17  released on bail pretrial, courts have said that there's

18  a different liberty interest at stake due to the

19  presumption of innocence and the statutes that are

20  involved.  And specifically, that the Bail Reform Act

21  requires the least restrictive conditions.

22          The government points to the Medina test, as

23  opposed to Matthews Balancing on the procedural due

24  process issue and I wanted to point out that every court

25  that has addressed the due process issue has used

10

Proceedings

1    Matthews balancing.  And the reason for that is that the
2    Medina court was looking at the state law and used a
3    lower threshold for due process -- as a matter of comity,
4    federal deference to state law.  Here we're dealing with
5    a federal statute.  We don't need to provide such comity
6    and so that standard Matthews balancing test for
7    procedural due process applies.
8           The three kind of prongs of the Matthews
9    balancing is the private interest.  I think the
10   government alleges that there's no liberty interest at
11   stake here and I think that the case law is squarely
12   against that and has held that their liberty interest at
13   stake for all of the various pretrial bail conditions and
14   it implicates freedom of movement, and freedom of travel
15   which are fundamental constitutional liberties.
16          On the government interest prong, the Act was
17   intended to protect minor victims and that's absolutely a
18   legitimate and important government interest but in this
19   case, it's just not tailored at all to specific
20   individuals which is what procedural due process
21   requires.
22          The Polizzi case dealt with a very similar type
23   of charge that we're dealing with in the instant case.
24   It was simply, you know, viewing minor victims on a
25   computer and there was simply no allegation that there

Proceedings

1   was any risk to actual victims and that there was just no

2   statistical foundation, Judge Weinstein held, for saying

3   that the government had an interest in applying this as a

4   blanket provision for anyone charged with a crime in that

5   category.

6          As to the procedural prong of Matthews

7   balancing, I would say that not only is there -- it's not

8   that there's very little or insufficient procedure here,

9   there's zero procedure here because it's a mandatory

10  condition.  The government relies in their brief on the

11  Solerno case, which is the major Supreme Court case on

12  procedural due process under the Bail Reform Act and the

13  Adam Walsh provisions.  That case is simply inapplicable

14  here.

15         Solerno was about a finding of dangerousness to

16  remand someone pretrial and finding dangerousness by

17  clear and convincing evidence.  The reason Solerno is

18  inapplicable is that a finding of dangerousness and a

19  remand on that ground is a rebutabble presumption, right?

20  There's a full adversarial hearing.  The defendant can

21  put on evidence.  It's exactly what the constitution

22  intends when it talks about procedure.  There's actually

23  a hearing and there's full procedure and that's what the

24  Solerno court said.

25         And so under Solerno, the Adam Walsh amendments

12

Proceedings

1    barely survive and they survive because there's a full-
2    blown adversarial hearing.  Here we're talking about a
3    mandatory provision.  It's not just a rebuttable
4    presumption and there's no case holds that a mandatory
5    provision can ever stand up against a procedural due
6    process challenge.
7              We're also bringing a substantive due process
8    challenge in this case and I think because the procedure
9    is so inadequate and the mandatory conditions are so
10   excessive for Mr. Kim, it raises the substantive due
11   process issue because the Fifth Amendment has been found
12   to protect against punishment.  Right?  The Eighth
13   Amendment, cruel and unusual punishment is imported into
14   the Fifth Amendment context for pretrial -- people who
15   have been released on bail pretrial, and a condition that
16   is so excessive and so denies due process can be found to
17   be punishment that not only is procedurally defective but
18   also violates substantive due process rights.
19             Very quickly on the excessive bail Eighth
20   Amendment point, again I think Solerno which addresses
21   and Eighth Amendment claim survives but only because
22   there is a full-blown adversarial hearing where the
23   defendant could rebut a finding of dangerousness.
24             And, you know, I think the touchstone of
25   excessive bail analysis is that it has -- excessive bail

13

Proceedings

1    is a judicial finding.  Every case to address that has

2    found that -- and this also implicates the separation of

3    powers issue where Congress is attempting to take away a

4    court's discretion for an entire category of people that

5    are charged with crimes and the Crowell case does a good

6    job of laying out the history of this but it says that,

7    "The setting of bail in federal criminal cases has been

8    recognized as representing the quintessential exercise of

9    judicial power."  And that's both the separation of

10   powers issue and also an issue that implicates excessive

11   bail because what excessive means, and Judge Weinstein

12   addresses this also in the Polizzi opinion, excessive is

13   a judicial determination.  And in this case, the Court

14   made a specific finding about what conditions were

15   sufficient but no greater than necessary and tailored for

16   this particular person.  And anything above that would be

17   excessive bail under the Eighth Amendment.

18           I wanted to address also briefly two cases.

19   Basically, the two cases that go the other way that the

20   government cites in their brief.  The first one is U.S.

21   v. Gardener (ph.) and that's a Northern District of

22   California case from 2007.  That opinion is by Magistrate

23   Judge Eddie Chen, who is a great civil libertarian and

24   who is almost always right on issues of civil liberties.

25   And I think the reason our case and every other case can

14

Proceedings

1  be distinguished from Judge Chen's case is that Judge

2  Chen did hold a hearing, just as this Court held a

3  hearing and Judge determined that a curfew was necessary

4  for that and this ties back to the curfew issue, Judge

5  Chen found that for that particular defendant, a curfew

6  was necessary both to protect the public and to guard

7  against a flight risk.

8          And at the initial bail hearing, imposed a

9  condition of curfew because he found that it was

10 necessary under the Bail Reform Act and then later, the

11 government moved to add a condition of electronic

12 monitoring and Judge Chen found that electronic

13 monitoring was necessary and narrowly tailored to enforce

14 the curfew.  And if he wasn't making an extra finding

15 that the electronic monitoring was -- because he had

16 already given process on the question of curfew and

17 electronic monitoring is simply an apparatus to enforce

18 the curfew, it didn't implicate Eighth Amendment and

19 procedural issues because he, in fact, granted that

20 procedure at the initial bail hearing and made that

21 factual finding.

22         The other case the government cites is U.S. v.

23 Kennedy which is a very strange Ninth Circuit case.  It's

24 an unpublished summary order.  And I'm happy to address

25 Kennedy further.  You know, I would say that the Kennedy

15

Proceedings

1   court simply got it wrong and that every opinion to come

2   after Kennedy has said that Kennedy got it wrong.  I

3   think that the -- with due respect to the judges on the

4   panel, they didn't understand what the Adam Walsh

5   Amendments actually said.

6           There's a good articulation of this in U.S. v.

7   Karper which is 847 F.Supp 2nd 350 which is a 2011 case.

8   Karper is the Northern District of New York.  Footnote 6

9   in Karper has a long explanation of Kennedy and what

10  Kennedy got wrong and says that Kennedy gave short shrift

11  to the notion of due process by finding that the Adam

12  Walsh Act requires a court to exercise its discretion to

13  the extent practicable.

14          So Kennedy essentially says there's also a Law

15  Review article that I can -- it's a St. John's Law Review

16  article that I -- was not addressed in my brief but it's

17  called the "Mandatory Pretrial Release Provision of the

18  Adam Walsh Act Amendments, How Mandatory Is it and Is it

19  Constitutional?" by Brian Derringer -- sorry, it's from

20  2012, 85 St. John's Law Review, 1343.  And it talks about

21  Kennedy using very harsh language and sort of endorsing

22  the views of all of the opinions that come after Kennedy

23  which shows that essentially Kennedy in a

24  -- remands the case in very short shrift saying that

25  ignoring the mandatory part of the provision and saying a

16

Proceedings

1   court should just use its discretion to apply these

2   conditions as required by the Adam Walsh Act, which is

3   simply impossible, given the letter of the law in that

4   subsection of Adam Walsh.

5          Finally, I just wanted to mention that the

6   government essentially asks the Court to revisit its

7   factual findings at the original bail hearing which I

8   think would be inappropriate.  The government talks about

9   the risk of danger to the community in this case and the

10  risk of flight in this case.  And I think, you know, the

11  Court already made findings that were appropriate to Mr.

12  Kim.

13         And I wanted to emphasize that this is not just

14  an academic point for Mr. Kim.  I think the government

15  refers to the electronic monitoring as an anklet, as if

16  it's a piece of jewelry and totally discreet.

17         Mr. Kim has already had to quit his job because

18  of this anklet.  He works as a waiter at a sushi

19  restaurant and he couldn't continue because he knew that

20  they were going to see -- it's not discreet at all.  It

21  can be seen through any pants, even baggy pants,

22  especially when -- it's very large and you can't pull it

23  up on your leg far enough.  And again, this goes to the

24  liberty interest at stake here.  And if employers find

25  out about it, especially in Mr. Kim's small church

17

                              Proceedings

 1   community, it could have had serious repercussions for

 2   him.

 3            I've had other clients who have to stay in my

 4   office to recharge their anklets and I think it really

 5   severe restricts their freedom to move and freedom to

 6   travel.  They really do have to be tethered to a wall and

 7   abide by a strict schedule of charging it.  And I think

 8   if you just think about the fact that pretrial and the

 9   government and defense are all joined in a desire to see

10   people working and being productive while they're out on

11   bail, and in situations where you have to be at your

12   place of work and say, you know, excuse me, while I plug

13   my leg into the wall for fifteen minutes because I am

14   charged with a crime, even though I am presumed to be

15   innocent, I think it is not -- the government really

16   tries to downplay that restriction.  Thank you.

17            THE COURT:  All right.

18            Ms. Berenson?

19            MS. BERENSON:  Your Honor, there are a great

20   number of issues that have been raised.  I can address

21   them in the order that Mr. Jacobson did or --

22            THE COURT:  Yes.

23            MS. BERENSON:  Okay.

24            THE COURT:  However you would like -- I'm not

25   being mic'd -- do it in whatever order you wish.

18

Proceedings

1          MS. BERENSON:  I think first to address the

2    issue that the Court raised which is the matter of

3    curfew, the government agrees with the Court's reading of

4    the law that curfew of some sort need be imposed.  For

5    that reason, the brief that was submitted to the Court

6    notes the interaction between curfew and electronic

7    monitoring and in so doing, I think appropriately notes

8    the discretion that the Court has in terms of fashioning

9    the appropriate curfew and form of monitoring for any

10   given defendant on an individualized basis.

11          That at its heart is the crux of the

12   government's argument as --

13          THE COURT:  This is an issue that I gave a

14   little bit of thought to.  I gave all of the issues some

15   thought but this one -- if the Court in its discretion

16   decided that a curfew was needed because of the Adam

17   Walsh Act, but a curfew of ten minutes was sufficient,

18   what's the point?  I mean, in my discretion let me impose

19   ten minutes of curfew between the hours of 3:30 and 3:40

20   in the morning.  Does that makes sense?

21          MS. BERENSON:  No, it does, your Honor.

22          THE COURT:  Okay.

23          MS. BERENSON:  And the government's --

24          THE COURT:  And so --

25          MS. BERENSON:  -- position is that --

19

Proceedings

1       THE COURT:  -- because in my discretion I say -

2  - I mean, I'm taking Kennedy which I agree with --

3  frankly, I agree with the defendant on, Kennedy makes no

4  sense.  You could remanded, so that the Court could

5  exercise its discretion in imposing some conditions.  If

6  I imposed a -- it seems to me that if I imposed -- if I

7  made the finding and I already did, that no curfew was

8  necessary, or I at least implicitly made that finding,

9  then in my discretion, to impose a ten-minute curfew is

10  all that, you know, would be required.  It just -- it

11  makes no sense for me to do that.

12       And nor does it make sense for me to impose

13  electronic monitoring to make sure there's compliance

14  with that ten-minute curfew.  So I just can't square

15  that.  I can't -- what discretion do I really have?  Do I

16  have the discretion to basically read the requirement out

17  of the statute and if I do, then by imposing such a

18  curfew that's meaningless, if I have that kind of

19  discretion, then what's the point of imposing it at all?

20  So it's something I am grappling with.  So -- and if you

21  think a curfew is necessary, I need to know why.  What is

22  the curfew needed for, other than the fact that it's

23  mandated by the statute?  So you can address all that.

24       MS. BERENSON:  Your Honor, the government

25  agrees with the Court in that imposition of a de minimis

Transcriptions Plus II, Inc.

20

Proceedings

1    curfew would not be appropriate and would not be

2    following the law.  I would like to say that the

3    defendant here seems to raise some liberty interests

4    including freedom of movement, and liberty that are

5    simply not in his submission to the Court.

6           The defendant's movement is not limited in any

7    way by the application of -- and a bracelet certainly,

8    the curfew is another matter and the two certainly do

9    have an interplay.  It seems like the Court is currently

10   asking more about the imposition of a curfew to which the

11   government can respond that Congress has legislated this,

12   among other requirements for certain classes of cases,

13   though it leaves to the Court the discretion to fashion

14   what is appropriate in each individualized case.

15          For instance, as you well know, some defendants

16   have a fairly restrictive curfew of something along the

17   lines of 7 p.m. to 7 a.m.  Other defendants are allowed

18   to be out and about until 11 p.m.  This defendant

19   currently in contravention of the law has no curfew set

20   on him and so to the extent that there's any argument

21   that his movement or liberty is currently restricted, the

22   government thinks respectfully that that's unfounded.

23          It's only really alerting pretrial at all if he

24   travels outside the bounds of New York City and Long

25   Island which is a term commonly imposed on defendants in

21

Proceedings

1    this jurisdiction.

2              THE COURT:  Well, but we don't impose

3    electronic monitoring to enforce that.  I mean, that's

4    not the -- and it seems to me that electronic monitoring

5    in this case, although Congress is not all that clear on

6    it because I don't think they even made any findings

7    apparently, at least I didn't go study the legislative

8    history.  Mr. Jacobson cited it and I didn't see any

9    argument with it.

10             But I think it's implied anyway, that the

11   reason for the electronic monitoring and the curfew

12   requirements and the mandated -- those mandated

13   requirements is Congress' somehow belief that people

14   charged with this particular offense, and others that are

15   mentioned in the statute, but this one also, are a danger

16   or pose a danger.

17             MS. BERENSON:  I think that's right, your

18   Honor.

19             THE COURT:  So we're not talking about risk of

20   flight here.  That's not the purpose of the electronic

21   monitoring.  So I'm not sure that the cases that deal

22   with electronic monitoring, to the extent that they do,

23   to protect against flight are applicable here.

24             Whatever interest is it that the government is

25   articulating here, is it seems to me, tied to

Proceedings

1  dangerousness.

2          MS. BERENSON:  I think that's true in part,

3  your Honor, but respectfully, I do think that flight also

4  plays a role here and I think that may be one reason why

5  these requirements are not mandatory, for example, on

6  defendants who are charged only with possession of child

7  pornography, which carries no mandatory minimum sentence,

8  as opposed to receipt or distribution, which do.  They

9  all involved viewing child pornography and so presumably,

10  the same risk to the community and the children.  And I

11  think that it says something that only the ones that

12  carry a mandatory minimum sentence of five years or more

13  have these impositions.  So I do think that flight is

14  implicated.

15          And, in fact, in conversations with defense

16  counsel, he has specifically raised to me the defendant's

17  grave concern about being deported to a country that he

18  has not lived in since he was a young child.  And so I

19  think that the defendant here, like many others similarly

20  situated, faces a strong incentive to flee.

21          THE COURT:  Well -- very well.  If that's your

22  argument and you think a curfew is necessary to protect

23  against that, I suppose you can make that argument.  What

24  else did you want to say?

25          MS. BERENSON:  Your Honor, the government

23

Proceedings

1   believes that substantive due process is the appropriate

2   analysis here and not procedural due process for the

3   reasons set forth more fully in their brief.  Namely,

4   that under the Supreme Court's decision in Connecticut

5   Department of Public Safety v. Doe, laws that apply to a

6   category of individuals where the determination of

7   dangerousness or risk of flight are irrelevant or have no

8   bearing on the particular imposition of a requirement,

9   for example registering as a sex offender, should govern

10  this case.  The analysis is not that different.

11        The government also feels that -- excuse me --

12  the government also believes that to the extent the Court

13  is concerned with Kennedy in that it remanded a case down

14  for the exercise of discretion within certain bounds,

15  that respectfully all discretion is exercised within

16  certain bounds and so the imposition of parameters at the

17  edge here should not prevent the Court from ruling that

18  these implementations of pretrial bail release conditions

19  are constitutional.

20        THE COURT:  All right.

21        MS. BERENSON:  As for the excessive argument

22  under the Eighth Amendment, the government's position is

23  that bail refers to monetary conditions and defense has

24  not cited any case to the contrary.  I don't know if the

25  Court has further questions on that.

24

Proceedings

1    THE COURT:  Well, it seems to me that Solerno
2    had -- I think in Solerno, there was certainly the
3    opportunity to make that argument and that the bail --
4    well, I think to me the question of -- the concept of
5    bail being restricted only to monetary terms is something
6    that is a product of history.  We even call it the Bail
7    Reform Act, so that we're talking about setting
8    conditions of release.  They don't even call it bail
9    anymore.  And I don't think that means that the Eighth
10   Amendment no longer has application, simply because we
11   don't call it bail anymore.  We call it conditions of
12   release.
13        In any event, so I am not persuaded by the
14   notion that bail, at least as it is used in the Eighth
15   Amendment is restricted to consideration of monetary
16   conditions.
17        MS. BERENSON:  Well, your Honor, I think that
18   the historical reference is appropriate here and I would
19   note that the conditions of release that are not monetary
20   can be met by individuals regardless of their means.  And
21   so I think it's appropriate to treat them differently.
22        THE COURT:  I'm not sure I know what you mean.
23   I am not sure I am following the argument that you're
24   making.
25        MS. BERENSON:  Well, were the Court to set a

25

Proceedings

1   certain financial condition of bail or pretrial release,

2   not all defendants would have adequate means to satisfy

3   such a condition.  They're not all wealthy.

4           But imposing a condition like curfew or

5   electronic monitoring, the two at issue here, are not

6   ones that a defendant can't be wealthy enough to comply

7   with.  And so I think treating them differently makes

8   sense.

9           THE COURT:  So that I guess the argument is

10  that except for excessive monetary conditions, there's no

11  -- the Court could impose detention, for instance, for

12  theft of mail, regardless of what -- I mean, Congress

13  could basically say in all theft of mail cases, detention

14  is mandated and that wouldn't be an excessive bail.

15          MS. BERENSON:  I'm not sure I am prepared to

16  speak to that hypothetical, your Honor, and it's --

17          THE COURT:  Well, it's not --

18          MS. BERENSON:  -- as it's a little --

19          THE COURT:  -- we weren't imposing a monetary

20  condition, we were just saying I mean, there's no

21  monetary -- Congress just makes a decision that detention

22  is always applicable and that that wouldn't be a

23  violation of the excessive bail clause.

24          MS. BERENSON:  Well, your Honor, in that

25  instance and respectfully, I think that that hypothetical

Transcriptions Plus II, Inc.

26

Proceedings

1    is quite far afield since in that hypothetical the

2    defendants would have to be remanded and that's not the

3    concern here.

4              THE COURT:  Well, it struck me that the

5    decisions in the early fifties, the Supreme Court was

6    dealing with -- and we were dealing with a system of

7    pretrial release where bail was limited to imposing

8    monetary conditions.  And what Courts started to do,

9    rather than saying you've got to detain somebody is they

10   just made bail so outlandishly high that people couldn't

11   possibly meet the bail, you know?  And the Court said

12   that was excessive bail, right?

13             MS. BERENSON:  Yes, your Honor.

14             THE COURT:  I mean, a violation of the -- but

15   so we have a regime now where courts can make detention

16   decisions.  But Congress doesn't make the decision.

17   Congress doesn't specify in advance that detention is

18   always mandated.  As a matter of fact, I don't even know

19   if for capital crimes Congress has said detention is

20   mandated.  Congress leaves that decision to the Court.

21             And I think to the extent you're making the

22   argument that bail as used in the Eighth Amendment means

23   only money, then it seems to me there's the -- except for

24   a court imposing excessive monetary bail, there could be

25   no violation of the excessive bail clause.

27

Proceedings

1          MS. BERENSON:  I think here, your Honor,

2   certainly there is none.  I think that's right.  I think

3   historically bail refers to financial conditions to pay.

4          THE COURT:  Okay.

5          MS. BERENSON:  And again, that's something that

6   some defendants simply may not have access to in terms of

7   their monetary resources.  But --

8          THE COURT:  Well --

9          MS. BERENSON:  -- all defendants have equal

10  access to imposition of other types of conditions that

11  the Court fashions and thinks are appropriate.

12          THE COURT:  No, I am talking about detention.

13  They don't even have a choice.  I mean, they can't meet

14  the -- if Congress were to pass a statute that said that

15  in all cases defendants are supposed to be detained, I

16  don't care what the charge is, I don't think that that --

17  well, I think you're saying that that wouldn't be a

18  violation of the excessive bail clause because there

19  wasn't a monetary decision, it was Congress just decided

20  everybody had to be detained.  All right.  If that's your

21  argument, that's your argument.

22          We are dealing here with a statute that says

23  that this condition has to be imposed.  Now I am not -- I

24  understand that I am using an extreme example but the

25  concept is the same.  If you're saying that bail as used

28

Proceedings

1    in the Eighth Amendment only means money and that the

2    excessive bail clause does not prohibit any other form of

3    restrictions on pretrial release, then -- I am not

4    convinced, let's put it that way.

5              MS. BERENSON:  Your Honor, I am not sure that

6    the two are comparable in comparing terms of pretrial

7    release versus detention.  I understand that you're

8    intentionally making a point that is, you know, at the

9    far end of this line of thought but I don't think every

10   argument can necessarily be carried to its --

11             THE COURT:  Well, no, of course not.

12             MS. BERENSON:  -- conclusion and still make

13   sense.

14             THE COURT:  But the argument you are making is

15   that bail means only money and I guess I am dealing with

16   that argument and --

17             MS. BERENSON:  Well, I --

18             THE COURT:  -- that's why I am using the

19   extreme example.

20             MS. BERENSON:  I mean the statute that you're

21   referring to, this hypothetical statute that could

22   require all defendants accused of any crime to be

23   detained, would violate other provisions of the

24   Constitution.  I'm not sure that it would violate the

25   excessive bail clause if there was no imposition of a

29

Proceedings

1  monetary fine.

2          THE COURT:  Well, it may violate other things,

3  too.  I don't know but I am -- all right.

4          MS. BERENSON:  But respectfully, that's not

5  what we're dealing with here and though the statute does

6  require imposition of certain provisions including curfew

7  and electronic monitoring, the Court has complete (sic)

8  discretion in terms of fashioning what's appropriate in a

9  given case.

10          THE COURT:  Not complete.  Not complete.  I

11  can't -- you were telling me that I really don't have the

12  discretion to impose ten minutes of curfew or five

13  minutes or thirty seconds --

14          MS. BERENSON:  That's true.

15          THE COURT:  -- of curfew.

16          MS. BERENSON:  That is true.

17          THE COURT:  So I don't have complete

18  discretion.

19          MS. BERENSON:  That's correct, your Honor, not

20  complete.  I misspoke.

21          THE COURT:  Okay.  All right.  I didn't mean to

22  cut you off.  If you have anything else you wanted to

23  address.

24          MS. BERENSON:  I think that the argument as to

25  separation of powers is the most far flung of the

30

Proceedings

1    defendant's.  I don't know if you have questions on that.

2    I think there is ample case law demonstrating that our

3    three branches of government interact in a variety of

4    ways in that they don't function autonomously and I think

5    Congress is well within its bounds to set parameters for

6    the Courts in their functioning.  I think they've done

7    that in other instances and this case is not remarkable,

8    though I understand that the Court has noted that it does

9    not have complete discretion to set all pretrial term

10   releases for certain categories of offenders.

11           THE COURT:  All right.

12           Mr. Jacobson, you have about three to four

13   minutes.

14           MR. JACOBSON:  I'll be very brief.

15           THE COURT:  Oh, did you want to say something

16   else?

17           MS. BERENSON:  Your Honor, before Mr. Jacobson

18   goes, I didn't know if Officer Lehr might like to address

19   some of the practical concerns raised here since he's

20   really closest to it.

21           THE COURT:  All right.  Well, I will let -- the

22   defendant did raise some practical matters.  So maybe --

23   I mean, if Mr. Lehr wants to weigh in on that, I'll

24   certainly hear him.

25           PRETRIAL SERVICES OFFICER:  I think with

31
Proceedings

1   respect to the charging, I think it's a little over

2   exaggerated in that you're not -- you do have to follow a

3   charging regimen.  We ask that they charge the bracelet

4   for an hour in the evening when they're home and an hour

5   before they leave in order for there to be enough time,

6   so that the battery doesn't deplete while --

7          THE COURT:  And what does that -- charging

8   means they literally are restricted to -- they have to be

9   connected electrically to something?

10         PRETRIAL SERVICES OFFICER:  Currently, yeah.

11  It would be similar to like phone charger.  that's the

12  best analogy I can give you.  There is new equipment

13  coming out which the AO has just approved which will make

14  it more -- a little more flexible because there will be a

15  battery that you can put in and take out and have another

16  one in at the same time but that's just being rolled out

17  towards this district probably at the end of the summer.

18  So we're not there yet but this is what we have to work

19  with right now.

20         But, yes, they do have to charge it.  They have

21  to be -- since the bracelet cannot be removed, they have

22  to be in proximity to the outlet in order to have it

23  plugged in.

24         THE COURT:  Okay.  All right.  Mr. Jacobson?

25         MR. JACOBSON:  If Ms. Azarelli could briefly

32

Proceedings

1   address the practical considerations from the social work

2   perspective?

3              THE COURT:  Okay.

4              MS. AZARELLI:  Thank you, your Honor.

5              THE COURT:  All right.

6              MS. AZARELLI:  So as, you know, Mr. Jacobson

7   noted, the imposition of the electronic monitoring has

8   interfered with Mr. Kim's ability to main his -- maintain

9   employment which --

10             THE COURT:  Maintain employment, did you say?

11             MS. AZARELLI:  Employment, right --

12             THE COURT:  Okay.

13             MS. AZARELLI:  -- at the Sushi restaurant.  I

14  think that for someone like Mr. Kim, where this is his

15  first interaction with the criminal justice system,

16  wearing a bracelet is a particularly different and

17  stressful change that he's having to navigate in his life

18  right now.  I think it has the potential, perhaps has

19  already had adverse psychological and interpersonal

20  consequences and I think would make it much more

21  difficult for Mr. Kim to fully and actively participate

22  in employment but also in educational and vocational

23  endeavors that we have discussed as well and kind of

24  integral to or inherent in those activities are

25  relationships and socializing which is -- and

33

Proceedings

1  productivity which are all three important social work

2  values that I think, you know, from again to the extent

3  that I can talk about social work in this setting, I

4  think Mr. Kim would be very adversely affected by --

5  through electronic monitoring.

6          THE COURT:  Mr. Jacobson, did you want to say

7  anything else?

8          MR. JACOBSON:  I do.  Thank you.  I wanted to

9  briefly mention that Solerno explicitly says that the

10 excessive bail clause requires process and the only thing

11 that saved the statute in the Solerno case was that there

12 was process and there was robust process.  It was the

13 entire -- the adversarial bail hearing.

14         And what saved the statute was that it was a

15 rebuttable presumption and I think Solerno really gets at

16 the point that as soon as you cross that line into a

17 mandatory condition, it has to be unconstitutionally

18 procedurally, substantively and under the excessive bail

19 clause of the Eighth Amendment.

20         The government addressed the Connecticut

21 Department of Public Safety, the Doe case, saying that

22 procedural due process doesn't apply and that it's

23 substantive due process here.  I think the reason it's

24 distinguishable is that Connecticut Department v. Doe is

25 a post-conviction case.  It's about Connecticut's Megan's

34

Proceedings

1  Law provision which requires people who are convicted of

2  certain criminal offenses to register with the

3  Connecticut Department of Public Safety.

4          So that case doesn't implicate the excessive

5  bail clause at all.  So, of course it's going to be

6  substantive due process but in a case where -- that

7  involves bail, a pretrial cases, where the excessive bail

8  clause is implicated, you're no longer in the Connecticut

9  v. Doe world.  You're then in the Solerno universe which

10 clearly says that not only is substantive due process

11 implicated but procedural due process, as well.

12         And just quickly to address some of the factual

13 points here, if Kennedy is right -- if the Kennedy case

14 is correct that the Court has discretion to impose a ten-

15 minute curfew, the issue with that is that electronic

16 monitoring is always twenty-four hours a day, seven days

17 a week.  There's no discretion for pretrial to say you

18 can take your bracelet off, except during that ten

19 minutes of curfew.  And that's why the liberty interest

20 is implicated in a different way from some imaginary

21 discretion that the Kennedy court thought a judge might

22 have in tailoring the curfew.  The electronic monitoring

23 can't be tailored in that same way.

24         And I think Judge Chen's point in his decision

25 is that electronic monitoring is really meant to enforce

35

Proceedings

1   -- its meant as add-on to curfew and home detention.

2   Here we have I as a stand alone provision. In Judge

3   Chen's case, he had already made a finding that curfew is

4   necessary and then electronic monitoring was added as a

5   way to enforce that because again, electronic monitoring

6   is not intended to speak to risk of flight.

7          That's all I have.  Thank you, your Honor.  Oh,

8   one last thing on the separation of powers point, I do

9   agree that the branches of government interact in all

10  sorts of ways.  I just think that the Courts have said

11  that they are not to interact when it comes to the

12  setting of bail and that's been a hard line that courts

13  have drawn.

14         For example, in the Crowell case where it says

15  that -- it states that "The setting of bail in federal

16  criminal cases has has been recognized as representing

17  the quintessential exercise of judicial power."  So that

18  is not a situation where Congress can simply step in and

19  take that discretion away from the judges.

20         MS. BERENSON:  Your Honor?

21         MR. JACOBSON:  That's all I have.

22         MS. BERENSON:  Your Honor, electronic

23  monitoring is being grossly oversimplified and

24  mischaracterized by the defense in this case and --

25         THE COURT:  Well, as I understand it, wit the

36

Proceedings

1   location -- at least for the location monitoring that Mr.

2   Kim is subject to, that is twenty-four hours.  That

3   nobody may be monitoring him but he's got to wear it

4   twenty-four hours a day and it's communicated -- it's a

5   GPS sort of system, right --

6           MS. BERENSON:  Yes, your Honor.

7           THE COURT:  -- which is communicating with the

8   -- but I mean, I understand the distinctions between the

9   GPS and the location monitoring.  He could have

10  electronic monitoring --

11          MS. BERENSON:  Via telephone, for example.

12          THE COURT:  -- via telephone, that's right.  I

13  understand that.

14          MS. BERENSON:  Yes.

15          THE COURT:  And that's not what's in place here

16  but we could -- I could order that --

17          MS. BERENSON:  Yes, should --

18          THE COURT:  -- in --

19          MS. BERENSON:  -- the Court decide that in

20  exercising its discretion in this case --

21          THE COURT:  No, I understand that.

22          MS. BERENSON:  -- that that's more appropriate

23  and --

24          THE COURT:  Right.

25          MS. BERENSON:  -- the defendant here --

37

Proceedings

1       THE COURT:  But it would still require twenty-

2  four hours wearing of a bracelet.  You --

3       MS. BERENSON:  No.

4       THE COURT:  -- can take off the bracelet?

5       MS. BERENSON:  There's no bracelet involved in

6  the telephone monitoring, your Honor.

7       THE COURT:  How is that done?

8       PRETRIAL SERVICES OFFICER:  Your Honor,

9  sometimes it kind of gets lumped together but we have

10  three distinct types of technology.  The voice I.D.,

11  which is what Ms. Berenson is referring to, which is

12  simply the telephone call.  So in that hypothetical

13  situation if you wanted to have a ten-minute curfew and

14  it had to be home, then we would have the phone calls

15  come in at that point.  There would be nothing to wear.

16       THE COURT:  Oh, that's electronic monitoring

17  within the meaning of the statute?

18       PRETRIAL SERVICES OFFICER:  Yeah, I believe it

19  is, your Honor, yes.

20       THE COURT:  Oh, okay.

21       MR. JACOBSON:  We have never had a client who

22  had that without an ankle bracelet, so far as I know.

23       THE COURT:  Well, but the government --

24       MS. BERENSON:  But that's within the Court's

25  discretion.

Proceedings

1        THE COURT:  -- but the government is saying

2   that it's -- a bracelet is unnecessary.

3        MS. BERENSON:  That's correct, your Honor.

4   It's within the Court's discretion to fashion the

5   appropriate forum and parameters of electronic monitoring

6   and curfew in all of these cases.  And the government

7   would also note that defense counsel previously

8   represented to the government that the reason the

9   defendant lost his job is because out of shame, due to

10  his parents' relationship with the owners of the sushi

11  restaurant he quit, not that he was unable to adequately

12  charge the bracelet.

13        THE COURT:  Okay.  All right.

14        MR. JACOBSON:  May I address that, your Honor?

15        THE COURT:  I've heard enough.  I think I've --

16  I have heard enough but I am prepared to rule.  I am

17  prepared to rule.  I have given some thought to this.  I

18  didn't read the Karper case but I am persuaded by the

19  reasoning of the cases that have held that this mandatory

20  imposition of both curfew and -- well, they were dealing

21  more with the electronic monitoring but the mandatory

22  conditions that are imposed by Adam Walsh to the extent

23  that they restrict liberty interests are

24  unconstitutional.

25        And I am persuaded that that's the case here

39

Proceedings

1   and so I am going to grant the modification of bail

2   conditions such that the electronic monitoring

3   restriction is removed and I won't impose a curfew, which

4   wasn't imposed before.

5          I am just going to briefly articulate the

6   reasons for the decision.  I'm relying really -- there's

7   no point in my restating the arguments that are made in

8   the cases that have held in accord with my ruling.

9   Specifically, I am ruling that it violates both due

10  process and the Eighth Amendment excessive bail clause.

11  I'm not as convinced about the separation of powers,

12  although frankly I'm troubled by the notion that Congress

13  will -- is encroaching on what is as one court has said,

14  a quintessential judicial function.

15          But since a decision on that ground is not

16  required, I am not going to make it but to the extent

17  that the Adam Walsh Act restricts liberty interests

18  without giving a defendant any opportunity to demonstrate

19  that those limitations on liberty are unnecessary is a

20  violation of the due process clause.  I don't know

21  whether that means it's a substantive violation or a

22  procedural violation.  There is no procedure.  So I guess

23  the lack of having any procedure means it violates a due

24  process clause.

25          The restrictions on liberty are not

40

Proceedings

1    insubstantial, even with a curfew because a person is

2    required to be at a certain place during certain periods

3    of time.  So that is a clear restriction and a limitation

4    on liberty interests and it's a fundamental interest.

5              I think that the Supreme Court has recognized

6    rights to travel, rights of movement and there's a

7    privacy interest implicated too which hasn't been

8    articulated in the cases yet but I think the Supreme

9    Court in the decisions it's handed down recently in

10   United States v. Grady, and United States v. Jones,

11   reflect even greater awareness of the right that a person

12   has to restrict the government from knowing where they

13   are, if you want to put it that way.  And Grady, indeed,

14   involved a requirement imposed by North Carolina that a

15   person wear location monitoring and this was post-

16   conviction, a sex offender, who had twenty-four hour

17   location monitoring.  The Supreme Court said that was a

18   search and that that was unconstitutional unless there

19   was a demonstrated reasonableness and remanded to permit

20   the lower courts to deal with that.

21             But it is a greater awareness, shall I put it

22   that way, that there's a growing belief that people do

23   have an interest in not having the government know where

24   they are twenty-four hours a day, unless there's a reason

25   to do it.

41

Proceedings

1       And here, there has been no demonstration

2   whatsoever that Mr. Kim poses a danger to any minor and I

3   believe that various conditions of release that are

4   imposed including pretrial supervision, but others as

5   well, are sufficient to assure his presence.

6       And so to the extent that the Court would

7   further restrict his movement without -- would be an

8   unnecessary imposition. And to the extent that the Adam

9   Walsh Act requires that the Court imposes it, it's

10  unconstitutional.

11      I do agree with the defense, I think Solerno

12  actually does have application in this case because I

13  agree that what the way I read Solerno is that what saves

14  the Bail Reform Act is that the Court retains -- is that

15  there is a procedure for the Court to make an

16  individualized determination as to what bail conditions

17  are needed, including whether detention is necessary.

18      And so to the extent that Adam Walsh takes that

19  individualized determination away from the Court and away

20  from -- and deprives the right of a defendant to have

21  such a determination, it is a violation of the due

22  process clause.

23      I think it's also a violation of the excessive

24  bail clause, although I will say this, it becomes a

25  closer case when as the government -- the less

42

Proceedings

1    restrictive the electronic monitoring is, the less likely

2    it is to be excessive.  So it is a much closer call to me

3    to say that electronic monitoring, if it's of the nature

4    that the government now has articulated, that is that it

5    conspiracy be done by simply having telephone monitoring,

6    then it becomes a little bit harder to -- I shouldn't say

7    harder, it's a closer case to say that that's excessive.

8            And nevertheless, it does require a defendant

9    to be at a specific place at a specific time and it is a

10   restriction on movement in that regard and it is to the

11   extent that it's unnecessary, I still find that that

12   could be excessive.  And again, it is in essence a curfew

13   that is -- being a restriction on a fundamental interest

14   can be excessive if it is imposed in a case where it's

15   unnecessary.

16           In any event, that's the rulings.  I am

17   removing the electronic monitoring provision and as I

18   said, I am relying on the many cases including the case

19   Judge Weinstein's decision, Judge Francis' decision, for

20   the basis for my rulings.

21           Is there anything else I need to do?  The

22   record is not all that clear, as I said, because there is

23   -- I don't know if there's any modification needed to the

24   actual conditions of release because the conditions of

25   release that I pulled up didn't contain the electronic

43

Proceedings

1   monitoring condition.  But it's perhaps noted somewhere
2   in the docket entry.
3           PRETRIAL SERVICES OFFICER:  You know, your
4   Honor, there's supposed to be a second page to this,
5   which is sort of --
6           THE COURT:  No, I have the second page.
7           PRETRIAL SERVICES OFFICER:  And it doesn't
8   reflect electronic monitoring?
9           THE COURT:  No.  I got the original --
10          PRETRIAL SERVICES OFFICER:  Oh, okay.
11          THE COURT:  I got a copy of the original.  I
12  know what's on the docket is not the -- is just the first
13  page.  But for whatever reason, the second page was not
14  changed, probably because this was a sort of end of the
15  day, last minute modification and so it didn't make it
16  into the record.
17          MR. JACOBSON:  I don't think the second
18  appearance was docketed with an entry.
19          THE COURT:  At all?
20          MR. JACOBSON:  I don't think so.
21          THE COURT:  Yes.  But nevertheless, the
22  electronic monitoring was imposed and that was
23  appropriate.  I don't mean to suggest it wasn't but to
24  the extent that it was imposed before, it's now vacated
25  and the government has its appeal, if it wishes.  All

44

Proceedings

1    right?

2            MS. BERENSON:  Thank you, your Honor.

3            THE COURT:  If there's nothing else, we're

4    adjourned.

5            MS. BERENSON:  Thank you, your Honor.

6            THE COURT:  Thank you.

7                     (Matter concluded)

8                        -oOo-

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

45

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **9th** day of **April**, 2016.

*Linda Ferrara*

Linda Ferrara

CET**D 656
Transcriptions Plus II, Inc.